[Cite as *State v. Allison*, 2026-Ohio-2912.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-250425 |
| | | TRIAL NO. B-2403437 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *JUDGMENT ENTRY* |
| MICHAEL D. ALLISON, | : | |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, the briefs, and the arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 7/29/2026 per order of the court.**

**By:**_____
**Administrative Judge**

[Cite as *State v. Allison*, 2026-Ohio-2912.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-250425 |
| | | TRIAL NO. B-2403437 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | |
| | | *O P I N I O N* |
| MICHAEL D. ALLISON, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: July 29, 2026

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Verjine V. Adanalian,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Angela Chang*, Hamilton County Public Defender, and *Joshua A. Thompson*, Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Presiding Judge.**

{¶1}    As defendant-appellant Michael Allison attempted to force his truck back onto the road after a failed merge, he forced a smaller, silver car into oncoming traffic. The resulting head-on collision left the silver car's driver dead and its passenger with serious injuries. Following a bench trial, the court below convicted Allison of reckless vehicular homicide and aggravated vehicular assault. Allison now appeals, arguing that he never validly waived his right to a jury trial, and that the weight of the evidence did not show that his driving was reckless. For the reasons set forth below, we reject both arguments and affirm his conviction.

## I.  Background

### A.

{¶2}    On May 2, 2024, Allison was headed southbound on Hamilton Avenue in a green Dodge Ram truck. Also heading southbound was a silver four-door car.

{¶3}    At the part of Hamilton Avenue at issue, two southbound lanes merge into one, with cars in the right lane directed to merge left. Allison was in the rightmost lane, approaching the point of merger. He sped up but failed to merge left at the point indicated. After that point, Allison's vehicle operated outside the rightmost boundary of what was now the sole lane of southbound traffic. Allison attempted to merge back into the flow of traffic by swerving his vehicle left back into the road. But the space Allison sought to occupy was already occupied by the smaller silver car, as well as a larger SUV.

{¶4}    As Allison veered left, his vehicle struck the SUV, whose driver managed to bring his vehicle to a stop.

{¶5}    Although no one disputes the minor collision with the SUV, the parties dispute whether Allison's truck made contact with the smaller, silver car. But whatever

the reason, the silver car responded to Allison's reentry into the southbound lane by veering left, into the lane of oncoming, northbound traffic. The silver car was struck "almost directly front on" by an oncoming truck towing an attached trailer.

{¶6} The driver and passenger were extracted from the silver car by emergency responders, placed in ambulances on stretchers, and transported to a hospital. The driver died in the hospital 22 days later from blunt impacts to his head, torso, and extremities, along with multiple fractures and visceral injuries. The passenger survived but needed surgery on his left leg where "the bone had split" and "kind of came through [his] skin." After a year of rehabilitative treatment, he testified, his leg functioned at about 80 percent of what it had before the crash.

**B.**

{¶7} Initially, Allison was cited for violating R.C. 4511.28(B), which prohibits drivers from overtaking or passing another motor vehicle "by driving off the roadway." Once officers learned of the driver's death, they voided the original citation and presented the case to a grand jury, which returned an indictment listing one count of aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a) and one count of vehicular assault in violation of R.C. 2903.08(A)(2)(b). In substance, the indictment charged that Allison, while operating a motor vehicle, had recklessly caused the driver's death and the passenger's serious physical harm.

{¶8} After the trial court accepted Allison's jury waiver, it proceeded with a two-day bench trial. After hearing from lay and expert witnesses and reviewing the evidence—including a video recording of the incident and photos of the scene—the trial court found Allison guilty on both counts. In its on-the-record findings, the court said it was "undisputed" that Allison "was operating a motor vehicle on the date and time alleged," and "that the collision resulted in the death of [the driver] and caused

serious physical harm to [the passenger]." The only real question, it said, was whether Allison had "acted recklessly as required to support convictions" under R.C. 2903.06(A)(2)(a) and 2903.08(A)(2)(b). The court found that Allison *had* acted recklessly, based on the "credible and consistent testimony and physical evidence establishing" (1) that Allison had "operated his vehicle on the right shoulder of the road in an attempt to pass" the SUV; (2) that "[w]hile doing so he sideswiped" the SUV; (3) that Allison had "then attempted to improperly merge into the lane occupied by the" silver car; and (4) that this had "forced [the silver car] to swerve into oncoming traffic where they were struck head-on by a Dodge Ram that was towing a trailer."

{¶9} The court sentenced Allison to 60 months in prison for the aggravated vehicular homicide and a consecutive 18 months for the vehicular assault, for a total of 78 months in prison. Allison now appeals.

## II. Jury Waiver

{¶10} In his first assignment of error, Allison contends that he never properly waived his right to be tried by a jury. The formalities and safeguards surrounding his waiver, he contends, were less than was required by the Revised Code, the Ohio Rules of Criminal Procedure, and the Ohio Constitution.

{¶11} Allison had a right to be tried by a jury of his peers. Article I, Section 5 of the Ohio Constitution promises that the "right of trial by jury shall be inviolate." And the Sixth Amendment to the United States Constitution specifically guarantees that in "all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." The latter guarantee is so "'fundamental to the American scheme of justice'" that it was "incorporated against the States under the Fourteenth Amendment." *Ramos v. Louisiana*, 590 U.S. 83, 93 (2020), quoting *Duncan v.*

*Louisiana*, 391 U.S. 145, 148-150 (1968).

**{¶12}** But even an inviolate, fundamental right can be waived. In Ohio, two provisions work together to govern waivers of the right to a jury: R.C. 2945.05 and Crim.R. 23(A).

**{¶13}** *First*, R.C. 2945.05 provides the requisite form of a jury waiver. The statute mandates that such waivers "shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof," and prescribes the particular language to be used. It further requires that a waiver "be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel." *Id.* In other words, for a jury waiver to be valid, it "must be (1) in writing, (2) signed by the defendant, (3) filed, (4) made part of the record, and (5) made in open court." *State v. Lomax*, 2007-Ohio-4277, ¶ 9. Strict compliance with R.C. 2945.05 is required for a valid waiver. *Id.* at ¶ 41. If a case is tried to the bench, and if the record lacks a strictly compliant jury waiver, we must reverse. *See State v. Osterman,* 2022-Ohio-2751, ¶ 5 (1st Dist.).

**{¶14}** *Second*, Crim.R. 23(A)—and the federal constitution—require that a jury waiver be knowing, intelligent, and voluntary. Under Ohio law, a written pretrial waiver that satisfies R.C. 2945.05 is "presumptively voluntary, knowing, and intelligent." *State v. Bays*, 1999-Ohio-216, ¶ 24; *accord Lomax* at ¶ 40. This presumption is rebuttable. But we may set aside an otherwise-valid statutory waiver under Crim.R. 23(A) only upon "a plain showing that the waiver was not freely and intelligently made." *Bays* at ¶ 24; *accord Lomax* at ¶ 40.

**A.**

**{¶15}** Allison first charges that his waiver failed to comply with the dictates of R.C. 2945.05. Specifically, Allison contends that his waiver was not properly made "in

open court." *See Lomax* at ¶ 9.

{¶16} The obvious purpose behind R.C. 2945.05 is to ensure that defendants are tried by their peers unless they specifically and deliberately choose to waive the right. Ideally, a trial court would enforce the full spirit of this statute by ensuring the defendant had a thorough opportunity to consult with their counsel, by confirming in a courtroom colloquy that the defendant meaningfully understands the right they are relinquishing, and by having the defendant actually execute the (very short) waiver form in open court. *Compare State v. Jells*, 53 Ohio St.3d 22, 26 (1990) (describing as the "better practice for the trial judge to enumerate all the possible implications of a waiver of a jury").

{¶17} But reality is not always ideal. While a robust colloquy may be advisable, it is not strictly required. The Ohio Supreme Court has held that R.C. 2945.05's "open court" requirement is met when there is "some evidence in the record of the proceedings that the defendant acknowledged the waiver to the trial court while in the presence of counsel, if any." *Lomax*, 2007-Ohio-4277, at ¶ 42. To comply, therefore, the defendant's oral waiver need not use "magic words," and the court need not engage in "a prolonged colloquy." *Id.* at ¶ 48. Rather, once a defendant has "inform[ed] the trial judge in open court that he [is] waiving his right to a jury trial," the court may accept his waiver, with or without engaging in "[f]urther questioning . . . to ensure [he] understood all the rights to a jury trial that he was giving up." *State v. Jackson*, 2014-Ohio-3707, ¶ 109.

{¶18} Further, courts have repeatedly held that a defendant's "written waiver need not be actually signed in open court as long as the signed writing has been made part of the record and the waiver is reaffirmed in open court." (Cleaned up.) *State v. Roberson*, 2021-Ohio-3705, ¶ 24 (12th Dist.). In *State v. Brooks*, 2023-Ohio-846, ¶ 18-

7

19 (1st Dist.), this court approved a trial court's mid-trial acceptance of a previously-signed jury waiver, after the defendant acknowledged his earlier signature and reaffirmed his decision to waive in open court. *See also State v. Kelly*, 2015-Ohio-2588, ¶ 22-24 (7th Dist.) (accepting waiver where defendant "acknowledged his earlier written waiver" in open court); *State v. Cantie*, 2010-Ohio-5350, ¶ 9-11 (8th Dist.) (accepting previously-signed waiver personally acknowledged by defendant). And courts have allowed lengthy delays between the execution of written waivers and their subsequent acknowledgment. *See*, *e.g.*, *State v. Naff*, 2019-Ohio-1261, ¶ 19-20 (2d Dist.) (accepting waiver executed five months prior to its in-court acknowledgment).

**{¶19}** Under this rubric, Allison's waiver clearly satisfied R.C. 2945.05's open-court requirement.

**{¶20}** Allison signed a jury-waiver form on May 19, 2025. Although the record contains some hints that there may have been a contemporaneous acknowledgment in open court, no transcript of such a hearing appears in the record.[1]

**{¶21}** When the parties convened for the bench trial on June 30, 2025, the court began with the following colloquy:

> THE COURT:  Mr. Allison, you previously waived your right to a
>
> jury trial and have chosen instead to have your case heard by the Court.
>
> Is that correct, sir?
>
> THE DEFENDANT:  Yes, Your Honor.

---

[1] Above the judge's signature on the May 19 jury-waiver form reads, "The Court hereby finds that the Defendant has been fully advised of their right to a trial by jury, and that the Defendant understands this right; and further finds that the Defendant knowingly, voluntarily, and intelligently waived this right in open court." Further, on June 9, 2025, the parties met in open court to set a new trial date. The prosecuting attorney asked the court, "If we are setting for the bench trial, can we do a jury waiver today on the record?" The bailiff responded, "We have done that already." The defendant did not interject. The record evinces no further waiver discussion until the day of trial. We note that Allison, in his docket statement, requested a complete transcript of proceedings pursuant to App.R. 9(B).

THE COURT: So the Court accepts your waiver as previously indicated in an earlier setting.

The bench trial then began. Neither Allison nor his counsel objected to the lack of a jury, expressed displeasure at the prospect of trying the case to the bench, or sought to rescind the waiver.

**{¶22}** This exchange sufficed to satisfy *Lomax*'s gloss on R.C. 2945.05's open-court requirement. Allison's unambiguous, verbal acknowledgment of his prior waiver served to "inform[] the trial judge in open court that he was waiving his right to a jury trial." *See Jackson*, 2014-Ohio-3707, at ¶ 109. Indeed, Allison's exchange was virtually indistinguishable from that approved in *State v. Sanders*, 2010-Ohio-3433 (10th Dist.). There, the trial judge had told Sanders, "It is my understanding that you have waived your right to a jury trial and would like to have the court decide this case," to which Sanders replied, "Yes." (Cleaned up.) *Id.* at ¶ 13. The Tenth District held that this was sufficient to satisfy R.C. 2945.05. Allison's similarly terse acknowledgment warrants a similar result.

**{¶23}** Allison also points to the delay between the execution of his written waiver and his acknowledgment of it in open court. But the six-week gap between Allison's signing and acknowledgment of the form pales in comparison to the *five-month* delay approved in *Naff*, 2019-Ohio-1261, at ¶ 19-20 (2d Dist.).

**B.**

**{¶24}** *Lomax* further held that, to satisfy R.C. 2945.05's open-court requirement, "there must be *some evidence in the record* that the defendant while in the courtroom *and in the presence of counsel*, if any, acknowledged the jury waiver to the trial court." (Emphasis added.) *Lomax*, 2007-Ohio-4277, at ¶ 49. Allison argues that the record here fails to show that that his counsel was present for the in-court

acknowledgment, thus rendering his waiver invalid under R.C. 2945.05. Again, we disagree.

{¶25} Allison is correct that his counsel is not mentioned and does not speak prior to or during Allison's on-the-record acknowledgment of his waiver. However, defense counsel spoke on the *very next page* of the transcript, with no intervening indication that he had just entered the room. While strict compliance with R.C. 2945.05 is necessary for a valid waiver, nothing in the statute or in *Lomax* requires that defense counsel orally acknowledge their presence prior to the in-court acknowledgment. Rather, *Lomax* requires "some evidence" of acknowledgment "in the presence of counsel." *Lomax* at ¶ 49. And here, counsel's response to a question just 21 lines after Allison's acknowledgment justifies an inference that counsel was present all along. The contrary inference is untenable, as it would require us to assume that the trial court went on the record, called Allison's case, and began the waiver discussion *without* Allison's attorney present, and that no one remarked upon counsel's tardy entrance just seconds later.

{¶26} We therefore hold that the record contained sufficient evidence that counsel was present for Allison's acknowledgment.

## C.

{¶27} Finally, Allison argues for a "shift in the law regarding jury waivers." He notes that the Ohio Constitution guarantees an "inviolate" jury right. Ohio Const., art. I, § 5. To *keep* that right "inviolate," he contends, this court must read R.C. 2945.05 to require *more* protections than recognized in *Lomax* and the mass of subsequent appellate decisions.

{¶28} The Ohio Supreme Court has said, time and again, that a compliant, written waiver is presumptively knowing, intelligent, and voluntary—and thus

10

presumptively constitutional. *State v. Brinkman*, 2022-Ohio-2550, ¶ 30; *Jackson*, 2014-Ohio-3707, at ¶ 110; *Lomax*, 2007-Ohio-4277, at ¶ 10; *State v. Fitzpatrick*, 2004-Ohio-3167, ¶ 37. And, as recently as 2022, it has reiterated that *Lomax* sets the standard for judging a waiver's compliance with R.C. 2945.05. *Brinkman* at ¶ 30. To reject a waiver because it meets, rather than exceeds, the requirements laid down in *Brinkman*, *Jackson*, and *Lomax* would undermine those decisions. This we cannot do.

**{¶29}** The constitution is only offended if a defendant is deprived of a jury *absent a valid waiver*. Allison does not dispute that he, in fact, signed a document purporting to waive his right to a jury. Because that document complied with R.C. 2945.05, it was presumptively valid. Of course, Allison had (and still has) a constitutional backstop: he may rebut the presumption by affirmatively showing his waiver was *not* voluntary. Because Allison points to no evidence to that effect, his waiver is valid, and the constitution permitted his trial without a jury.

**{¶30}** Accordingly, Allison's first assignment of error is overruled.

### III. *Manifest Weight*

**{¶31}** In his second assignment of error, Allison argues that his convictions were against the manifest weight of the evidence. To assess manifest weight, we review the record, then weigh the evidence and all reasonable inferences to assure ourselves the factfinder—here, the trial court—did not lose its way in finding guilt beyond a reasonable doubt. *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983); *State v. Reillo*, Slip Opinion No. 2026-Ohio-2701, ¶ 26. Manifest weight concerns the State's burden of persuasion. *See State v. Messenger*, 2022-Ohio-4562, ¶ 26; *State v. Gibson*, 2023-Ohio-1154, ¶ 39 (1st Dist.). We must therefore consider witnesses' credibility, where a cold record allows. *State v. Garrett*, 2026-Ohio-49, ¶ 69 (1st Dist.). But because we did not observe the witnesses firsthand, we defer to the trial court's

credibility judgments in all but those "'most exceptional circumstances,' when the factfinder 'disregarded or overlooked compelling evidence' that contradicted its findings." *Garrett* at ¶ 69, quoting *Gibson* at ¶ 39; *see also Reillo* at ¶ 31-32. If we conclude that the trial court lost its way in resolving such contradictions, creating a miscarriage of justice, we must order a new trial. *Martin* at 175; *Reillo* at ¶ 26.

**{¶32}** Allison challenges both of his convictions. To convict Allison on the reckless-vehicular-homicide count, the State had to show that he (1) operated a motor vehicle, (2) did so "recklessly," and so (3) caused the death of the silver car's driver. *See* R.C. 2903.06(A)(2)(a); *State v. Davis*, 2021-Ohio-1693, ¶ 56 (1st Dist.). Conviction on the vehicular-assault count required similar proof, except that the State had to show that Allison's recklessness caused the passenger's "serious physical harm," rather than the driver's death. *See* R.C. 2903.08(A)(2)(b); *State v. Sow*, 2019-Ohio-4028, ¶ 12 (1st Dist.).

## A.

**{¶33}** The bulk of Allison's argument under his second assignment of error asserts that the State failed to prove he acted "recklessly" in causing either the driver's death or the passenger's injuries.

**{¶34}** A statute can proscribe recklessness with respect to (1) the *results* of an individual's conduct, (2) the *nature* of that conduct, or (3) the *circumstances* surrounding that conduct. In the vehicular-homicide statute "[r]ecklessly" modifies the phrase "caus[ing] the death of another," R.C. 2903.06(A)(2)(a), while in the vehicular-assault statute, it modifies "caus[ing] serious physical harm to another person," R.C. 2903.08(A)(2)(b). Thus, both charges at issue here concern recklessness with respect to results. A person exhibits this sort of recklessness when, "with heedless indifference to the consequences," they "disregard[] a substantial and unjustifiable

risk that [their] conduct is likely to cause a certain result." R.C. 2901.22(C). By "substantial risk," the Code means "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur." R.C. 2901.01(A)(8).

{¶35} So, to prove Allison acted recklessly for purposes of R.C. 2903.06(A)(2)(a) and 2903.08(A)(2)(b), the State needed to show that, with heedless indifference to the consequences, he unjustifiably disregarded a strong possibility that the way he was operating his truck would cause death and serious physical harm.

**B.**

{¶36} Here, the testimony of those who witnessed the accident, the video recording of the collision, and the photographic evidence generally point to a unified narrative.

{¶37} Michelle Clay testified in detail about the incident. Before the crash, Clay had been travelling in the right-hand lane of Hamilton Avenue behind Allison's green truck. Clay could see the smaller, silver car "on the side of" her in the left lane, behind "a tan car." Clay watched as Allison attempted "to hurry up and beat the tan car" to merge into the left lane. But by the time Allison had passed his tan competitor, Clay said, "the lanes were already kind of merged." Allison "tr[ied] to force [his] way in front of everybody" in the left-hand lane but "couldn't get over," so he began "driving on the sidewalk trying to get in front of the tan car." The tan car sped up, and Allison's "green pickup truck kind of sided to the left," which caused the silver car "to hit oncoming traffic, another car head-on."

{¶38} The driver of the SUV, who had been directly behind the silver car, testified similarly. He had observed Allison's green truck "coming up and trying to get back into that merging lane," even though the "merge lane had run out" and "[t]here was no way" for Allison "to merge into [the] lane." The SUV driver told the court that,

once Allison had driven past the end of the merge lane, "there was no way he could merge back in without" hitting the SUV.

{¶39} Both of these witnesses' testimony matched the (admittedly blurry) video of the crash. And both identified the relevant actors in still frames from the video during trial.

{¶40} The trial court also heard from Springfield Township Police Officer Zoellner, who testified that, at the point of merger on Hamilton Avenue, the left lane had the right of way, while the right lane had a duty to safely merge left. He said that, if it was not safe to merge, the merging driver was obligated to wait in the merge lane until a safe opportunity presented itself.

{¶41} Officer Zoellner further authenticated several photos purporting to "show the path of the striking vehicle, the green Dodge Ram, as it came to its final resting place." These photos depict tire marks in a grass patch off the right side of Hamilton Avenue and on the white fog line indicating the rightmost boundary of the road—suggesting that a vehicle drove over the fog line and into the grass, then back over the line and into traffic, just before it would have collided with a pole.

{¶42} Testimony, photos, and video all supported the trial court's findings that Allison drove "onto the shoulder, in fact onto the grass, nearly missing" the white pole, then "struck [the SUV] on the passenger side and while doing so attempted to merge into an already occupied lane of traffic in a manner that caused [the silver car] to swerve into the northbound lane of traffic." And based on these findings, we cannot say the trial court lost its way in finding that Allison's driving "reflect[ed] a disregard for the known risk of serious harm or death that can result from using the shoulder of a roadway to pass other vehicles and certainly from forcing occupied vehicles out of their lane of travel." In other words, the evidence supported the trial court's ultimate

conclusion that Allison "acted recklessly under Ohio law."

**C.**

**{¶43}** Allison, however, points to several alleged mistakes in how the trial court resolved conflicts in the evidence. None undermine the trial court's basic findings.

**{¶44}** First, Allison points to minor inconsistencies between Clay's testimony and that of the surviving passenger from the silver car. Allison contends that these two witnesses differed in how they recalled the relative positions of their cars. Clay identified the relative positions of her car, the silver car, and Allison's truck using the video recording. Her identifications were generally consistent with the remainder of her testimony and with the State's theory of the case. The injured passenger, however, seemed to remember the cars' positions somewhat differently. But this is hardly surprising. The force of the accident rendered him unconscious. The trial court could therefore easily have overlooked some understandable haziness in his testimony.

**{¶45}** Allison further argues that the tire marks in the photographic exhibits are unreliable, because there was no testimony definitively attributing them to the incident at hand. But Officer Zoellner testified (without objection) that the photos "show[ed] the path of the striking vehicle, the green Dodge Ram, as it came to its final resting place." And given the tire marks' consistency with the other witnesses' accounts and what can be seen on the video, the trial court, as factfinder, could infer their origin.

**{¶46}** Allison next argues that "there was no evidence that [he] was speeding, that he was intoxicated, or anything else that would generally be used to demonstrate recklessness in an Aggravated Vehicular Homicide or Vehicular Assault case." But this argument mistakes the law. While speeding or intoxication may sometimes be *sufficient* to show recklessness, they are *not necessary. See, e.g., State v. Monigold*,

15

2004-Ohio-1554, ¶ 15 (7th Dist.) (holding that "the fact that a person is driving under the speed limit does not mean that the person is not driving recklessly" and affirming R.C. 2903.06(A)(2)(b) conviction based on dangerous driving choices). The question is simply whether "the manner in which [Allison] was driving . . . could logically lead a reasonable jury to conclude that [he] was acting recklessly." *Id.* at ¶ 17. As we have already explained, the evidence here permitted a finding of recklessness.

**{¶47}** Finally, Allison argues that the evidence did not show that his vehicle actually struck the silver car. But this argument misses the mark. The trial court noted that it was "disputed whether [Allison's] vehicle made direct contact with [the silver] car," but declined to resolve the issue. Instead, it held that Allison's driving choices were reckless, regardless of whether they led to an actual collision with the silver car. And it concluded held that those reckless choices caused the silver car's ultimate collision, even if the silver car swerved to *avoid* hitting Allison's vehicle. Thus, the trial court's findings did not rest on evidence that Allison actually hit the silver car.

**{¶48}** Accordingly, we hold that the trial court did not lose its way in determining that Allison recklessly caused the death of the silver car's driver and the serious injuries of its passenger. The second assignment of error is overruled.

### *IV. Conclusion*

**{¶49}** Having overruled both assignments of error, we affirm.

Judgment affirmed.

**NESTOR** and **MOORE, JJ.,** concur.